*A. Pollok* and *T. D. Stetson*, for the appellants.

*J. L. Kingsley*, for the appellee.

---

H. W. FARLEY, APPELLANT,

*vs.*

NATIONAL STEAM-GAUGE COMPANY, ASSIGNEE OF ENOS G. ALLEN, APPELLEE.    INTERFERENCE.

INVENTOR NOT AWARE OF THE VALUE OF HIS INVENTION.—An inventor may not be aware of the full value of his invention, but under the patent laws the fact of invention, and not a knowledge of the degree of its utility, is the proper subject of inquiry. If an inventor omits to test the value of his invention, and fails to bring it into use, and remains ignorant of the extent of its value, he is yet entitled to a patent as against a subsequent discoverer.

PRIOR INVENTION—PERFECTED INVENTION, WHAT—HOW MANIFESTED.—To constitute a perfected invention which will entitle a party to a patent, it is not necessary that he should have actually constructed the machine which is the subject of his invention. If, having conceived a valuable idea, he has manifested it before the world, in any form which evidences the completeness of the idea, and which is sufficient, when communicated to others, to enable those skilled in the particular art to reproduce his invention, he has done enough to entitle himself to a patent, and this whether such evidence consist of written description, drawings, models, or a complete machine.

SM—STEAM-PRESSURE GAUGES—PART OF MACHINE ONLY CONSTRUCTED.—Where the invention consisted in merely substituting a volute spring of a described character for the springs before used in steam-pressure gauges, and the inventor had actually constructed such a spring with the surrounding parts, and had declared that the apparatus was designed as an improvement in steam-pressure gauges: *Held,* That he had sufficiently manifested his invention to those skilled in the art, and that it was not necessary to the completeness of the invention that he should have actually put the device upon an engine.

(Before MERRICK, J., District of Columbia, March, 1859.)

MERRICK, J.

Having carefully read over the immense mass of testimony in the cause, together with the voluminous arguments of the respective counsel, and also the carefully-prepared reports of the examiner in charge of the special branch of the Office to which the claims in question appertain, I shall, without any extended analysis of the arguments or testimony, state the conclusions I have reached. The patent of Allen, issued on the 16th of October, 1857, (No. 18,526,) was for an improvement upon steam-gauges, consisting of the application of a volute spring, as set forth, which increases both in width and thickness from its centre to its circumference, in combination with a disc of rubber or other elastic material, substantially in the manner and for the purposes specified in detail in his specification. The application of Farley is for an improvement in steam-gauges, which consists of "the combination of a coiled spring, tapered regularly both in width and thickness from its periphery to its center, with a steam-tight, flexible diaphragm and an indicator, the whole constituting a pressure-gauge, operating substantially as set forth" in his specification. Forasmuch as steam pressure gauges, before the invention of either party, were well known, embracing the several parts of indicator, coupling box, elastic diaphragm of rubber or other material, and flat, round, coiled, and other-shaped springs, it is manifest that the only point of novelty in either application is the employment of the double-tapered spring in lieu of every other species of spring, and that by reason of its specially correct sensitiveness to the pressure of elastic fluids. It must also be remembered that the double-tapered spring was not the discovery of either of the contending parties, but was well known and used for other

purposes, perhaps so nearly analogous that it may well be questioned whether its adaptation to a steam-pressure gauge were so far novel as to authorize a patent to anybody.   But a patent having been granted to Allen, and not having any jurisdiction to vacate a patent once actually issued, upon an appeal like the present I shall not pursue that inquiry, but for the purposes of this case concede the patentability of his invention.   It simply remains to inquire which of these two was the first to apply such a spring to steam-gauges.

Upon the evidence in the case, it is incontestible that Farley was the first to make a completed machine including double-tapered spring, elastic diaphragm, coupling box, and indicator, and that this was effected about the 4th of March, 1857.   It is equally true from the testimony that Farley had not endeavored to apply this double-tapered spring to steam-gauges before the middle of February, 1857.

Although the testimony on the part of Allen is in many parts obscure, and its weight greatly impaired by his declarations and conduct subsequent to Farley's invention, yet the credibility of his witnesses must not be overthrown by his mysterious declarations and conduct, however unenviable a light these may reflect upon himself.   From the testimony of these witnesses, I have become satisfied that Allen had in 1855 and 1856 prepared double-tapered coiled springs, elastic diaphragms, and coupling boxes, substantially the same as Exhibits Nos. 1 and 2, for the purpose of applying them to steam-gauges, and had so declared his intention and explained his purpose to these witnesses.   That he was not at that time, nor until after a careful examination of Farley's machines, aware of the full merits of the invention, is probable ; but in the sense of the patent laws the fact of invention, and not a knowledge of the degree of its utility, is the proper subject of inquiry.   If a party omit to test the value of his invention, and fail to bring it into use, and himself remain ignorant of the extent of its value, if it be the same with that of a subsequent discoverer, he is yet entitled to a patent over the latter.   But the Office seems to have supposed that the preparation of these double-tapered volute springs, combined with the elastic diaphragms and coupling boxes, and the declaration of the inventor that he purposed with them to make a steam-gauge which should supersede all those

then in use, or, in his own phrase, " knock the other manufacturers of steam-gauges higher than a kite," was not enough, because he does not show that in fact he combined them with an indicator, so as to produce a complete machine, before the invention of Farley. It appears to me that in this position consists the error into which the Office has fallen.   To constitute a perfected invention which will entitle a party to a patent it is not necessary that he should have actually constructed the machine which is the subject of his invention.   If, having conceived a valuable idea, he has manifested it before the world in any form which evidences the completeness of the idea, and which is sufficient, when communicated to others, to enable those skilled in the particular art to reproduce his invention, he has done enough to entitle himself to a patent, and this, whether such evidence consist of written description, drawing, models, or a complete machine.   Now, it must be apparent that the steam-pressure gauge having an indicator being a well-known machine, and Allen himself, at the time referred to, having been engaged in the manufacture and sale of the article under several different modifications, when he placed the double-tapered volute spring, in combination with the elastic diaghragm, in a coupling box, fitted for union with an indicator, and declared that with this improvement he was about to construct a steam-pressure gauge which was superior to and would supersede all those in use, he had manifested enough of his invention to enable any one at all skilled in the particular manufacture to make a perfect steam-gauge according to his idea.   There being no novelty in combining an indicator with a gauge, but that combination being of every-day occurrence, and the only novelty whatever in the matter, if any, being the substitution of the double-tapered volute spring for the common volute and all other forms of spring, the invention was complete whenever this substitution was plainly manifested, as was shown to have been done in this case.   If I am correct in this view of the law, then the novelty of Farley's invention was anticipated by Allen, and the decision of the Office must on that ground be reversed and a patent refused to H. W. Farley.

Should the conclusion I have reached be erroneous, I feel gratified to know that the party injured is not without further remedy, as the sixteenth section of the act of 1836, taken together with the tenth section of the act of 1839, open to him the courts of the

circuit where the parties live; and there, where the witnesses are known, and every circumstance calculated to elicit the truth is accessible to both parties, ample justice may be obtained.

Now, therefore, I hereby certify to the Honorable Commissioner of Patents that I have, after due notice to the parties, examined and considered the foregoing case, and that the decision of the Office, awarding a patent, as prayed, to Henry W. Farley, is reversed and his application for a patent is rejected.

*Samuel Cooper*, for the appellant.

*A. Pollok*, for the appellee.